811 So.2d 799 (2002)
In re ESTATE OF Clarence Edward McCLARAN, Jr.,
Rhonda R. McClaran, Appellant,
v.
SunTrust Bank, Southwest Florida, as Personal Representative of the Estate of Clarence Edward McClaran, Jr., Appellee.
No. 2D00-5546.
District Court of Appeal of Florida, Second District.
March 15, 2002.
Larry D. Sutton of Roosa, Sutton, Burandt & Adamski, LLP, Cape Coral, for Appellant.
Robert E. Bone, Jr., of Cottrell, Warchol, Merchant & Rolling, LLP, Cape Coral, for Appellee.
ALTENBERND, Judge.
Rhonda R. McClaran, the pretermitted spouse of Clarence Edward McClaran, Jr., appeals a probate order requiring all estate taxes, including taxes attributable to certain life insurance, to be paid out of the residuary estate. We conclude that the language in Mr. McClaran's will, which was prepared in 1989, is insufficient under section 733.817, Florida Statutes (1999), to override the standard statutory method for the apportionment of estate taxes. Accordingly, we reverse and remand for further proceedings.
Mr. McClaran died on October 25, 1998, at the age of fifty-five. He was survived by his third wife, Rhonda R. McClaran, as *800 well as his two former wives. Mr. McClaran's heirs included four children from his two prior marriages. As a result of his death, his second wife received the death benefits provided by four life insurance policies, totaling approximately $460,000. Two more life insurance policies were payable to an irrevocable life insurance trust for the benefit of the four children. Sun-Trust Bank, Southwest Florida (Sun-Trust), is both the personal representative of Mr. McClaran's estate and the trustee of the children's irrevocable trust.
Mr. McClaran executed both his will and the life insurance trust agreement in 1989. His will provides in pertinent part:
My personal representative shall pay from the residue of my estate all expenses of my last illness and funeral, costs of administration including ancillary, costs of safeguarding and delivering devises, other proper charges against my estate, and estate and inheritance taxes assessed by reason of my death, except that the amount, if any, by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which I may have a qualifying income interest for life or over which I may have a power of appointment shall be paid by the person holding or receiving that property. Interest and penalties concerning any tax shall be paid and charged in the same manner as the tax. I waive for my estate all rights of reimbursement for any payments made pursuant to this article.
(Emphasis supplied.)
His trust agreement provides in pertinent part:
Upon the death of the settlor, the trustee may, in its sole and absolute discretion, pay to the estate of the settlor from the principal of the trust fund, prior to its division, such amounts as may be needed to pay all or any part of the settlor's debts, funeral expenses and administration expenses of his estate. The trustee may pay to the settlor's estate or the appropriate tax authorities all estate and inheritance taxes that may become payable by reason of the settlor's death in respect of all property comprising the settlor's gross estate for death tax purposes, whether or not such property passes under this Agreement, under the settlor's will or otherwise, it being intended that all such death taxes be borne by the settlor's estate to the extent that the assets thereof are sufficient for that purpose.
Primarily as a result of the life insurance proceeds, Mr. McClaran's estate owed approximately $205,000 in state and federal estate taxes. SunTrust paid these taxes from the irrevocable life insurance trust and then sought reimbursement from the estate. Rhonda McClaran objected to the reimbursement because it would leave insufficient funds in the residuary estate to pay creditors' claims and would eliminate her claim for a portion of the residue.
The trial court conducted an evidentiary hearing and concluded that SunTrust, as trustee, was entitled to reimbursement for the payment of estate taxes from the estate. We conclude that the trial court erred in its ruling, as a matter of law, because it failed to enforce the version of section 733.817 that became effective a few days before Mr. McClaran's death.
Section 733.817 contains a rather complex statutory method for the apportionment of estate taxes. This section was extensively amended by the legislature in 1997. See ch. 97-240, § 9, Laws of Fla. In order to give affected persons the time and opportunity to amend their estate plans, these amendments did not become effective until October 1, 1998. See ch. 97-240, § 14, Laws of Fla. Mr. McClaran did not amend his estate plan to address either his *801 new marriage or the statutory amendments.
As amended, subsections (4) and (5) of section 733.817 provide general rules to apportion estate taxes among the recipients of the assets within the taxable estate. These sections apply "except as otherwise effectively directed by the governing instrument." See § 733.817(4). The parties agree that these statutory provisions would not require the taxes attributable to the life insurance to be paid from the estate. Apparently, the statutory rules would require the tax to be apportioned among the recipients of the insurance proceeds. See § 733.817(4)(a), (5)(f), Fla. Stat. (1999); 26 U.S.C. § 2206.[1] Thus, the primary question in this case is whether the governing instrument overrides the statutory scheme.
For purposes of section 733.817 and the estate plan involved in this case, the parties agree that the will is "the governing instrument."[2] Section 733.817(5)(h)(4) provides:
For a direction in a governing instrument to be effective to direct payment of taxes attributable to property not passing under the governing instrument from property passing under the governing instrument, the governing instrument must expressly refer to this section, or expressly indicate that the property passing under the governing instrument is to bear the burden of taxation for property not passing under the governing instrument. A direction in the governing instrument to the effect that all taxes are to be paid from property passing under the governing instrument whether attributable to property passing under the governing instrument or otherwise shall be effective to direct the payment from property passing under the governing instrument of taxes attributable to property not passing under the governing instrument.
In this case, Mr. McClaran's will does not expressly refer to section 733.817(5)(h)(4) because that section did not exist when the will was executed. Thus, the narrower question in this case is whether the will expressly indicates that the property passing under the governing instrument is to bear the burden of taxation for property not passing under the governing instrument.
Section 733.817(5)(h)(4) suggests that one may opt out of the statutory rules of apportionment by employing language in the will similar to: "[A]ll taxes are to be paid from property passing under the governing instrument whether attributable to property passing under the governing instrument or otherwise." As earlier quoted, the will provides that the following shall be paid from the residue of the estate:
[E]state and inheritance taxes assessed by reason of my death, except that the *802 amount, if any, by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which I may have a qualifying income interest for life or over which I may have a power of appointment shall be paid by the person holding or receiving that property.
SunTrust maintains that the exception contained in this clause is sufficient to fulfill the requirements of section 733.817(5)(h)(4). We disagree. Although the exception excludes certain taxes from payment by the estate, it does not "expressly indicate" that the property passing under the will should be used to pay taxes for property passing outside the will.
It is clear that the probate court looked to the content of the irrevocable trust to determine the intent of the will. We conclude that the new statute governing apportionment is intended to require express language in the will itself when it is the governing instrument. By requiring express language, the statute minimizes the number of cases in which the courts must search for the testator's intent as to the apportionment of taxes. Mr. McClaran's will does not contain the language required by section 733.817(5)(h)(4), and there is no longer a justification to look for the testator's intent when that language is missing.[3]
Although the parties have relied upon case law predating the total revision of section 733.817, we are somewhat concerned that the case law has been superseded by the extensive statutory changes. Nevertheless, our outcome today appears compatible with the decisions in both Ferrone v. Soffes, 558 So.2d 146 (Fla. 3d DCA 1990), and Keesee v. Neely, 498 So.2d 1026 (Fla. 2d DCA 1986).
Reversed and remanded.
WHATLEY and CASANUEVA, JJ., concur.
NOTES
[1] We comment that the apportionment of the taxes under this statute is a matter that the probate court has not yet performed in light of its ruling. Because the parties have not litigated these matters and the trial court has not ruled upon them, this opinion does not reach issues associated with the apportionment.
[2] See 733.817(1)(b), Fla. Stat. (1999). Section 733.817(1)(b) defines "governing instrument" as "a will or trust agreement or any other document that controls the transfer of an asset on the occurrence of the event with respect to which the tax is being levied." Although Mr. McClaran's life insurance trust could meet the definition of a governing instrument, the parties agree that it is not the controlling document in this case because its language is permissive, while the language in the will is directive.
[3] This is not a case involving the more complex rules associated with revocable trusts. See § 733.817(5)(h)(2), (3), Fla. Stat. (1999).